UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

SARAH M. LAURIANO,           )  5:13CV2194
                             )
            Plaintiff        )
                             )
      v.                     )  MAG. JUDGE KENNETH S. McHARGH
                             )
COMMISSIONER OF SOCIAL       )
      SECURITY,              )
                             )
                             )
            Defendant        )  MEMORANDUM
                             )  AND ORDER

McHARGH, MAG. JUDGE

The issue before the court is whether the final decision of the Commissioner

of Social Security ("the Commissioner") denying Plaintiff Sarah M. Lauriano's

application for Supplemental Security Income benefits under Title XVI of the Social

Security Act, 42 U.S.C § 1381 *et seq*., is supported by substantial evidence and,

therefore, conclusive.


I.  PROCEDURAL HISTORY

On May 7, 2010, Plaintiff Sarah M. Lauriano ("Lauriano") applied for

Supplemental Security Income benefits.  (Doc. 13, tr., at 105-111.)  Lauriano stated

that she became unable to work because of her disabling condition on June 17,

2009.  (Tr., at 105.)  Lauriano listed her physical or mental conditions that limit her

ability to work as "blind in left eye; stroke caused weakness; depression' and asthma."  (Tr., at 124.)

Lauriano's application was denied initially and upon reconsideration.  (Tr., at 64-65.)  On June 10, 2011, Lauriano filed a written request for a hearing before an administrative law judge.  (Tr., at 80-81.)

An Administrative Law Judge ("the ALJ") convened a hearing on April 30, 2012, to hear Lauriano's case.  (Tr., at 27-63.)  Lauriano was represented by counsel at the hearing.  (Tr., at 27, 29.)  James Primm ("Primm"), a vocational expert, attended the hearing by telephone, and provided testimony.  (Tr., at 29, 55-61.)

On June 1, 2012, the ALJ issued his decision applying the standard five-step sequential analysis[1] to determine whether Lauriano was disabled.  (Tr., at 10-21.)

---

[1] Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. Id. § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. Id. § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. Id. § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. Id. § 404.1520(a)(4)(v).

> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997).

Based on his review, the ALJ concluded Lauriano was not disabled.  (Tr., at 10, 21.)

Following the issuance of this ruling, Lauriano sought review of the ALJ's decision

from the Appeals Council.  (Tr., at 9.)  However, the council denied Lauriano's

request for review, thus rendering the ALJ's decision the final decision of the

Commissioner.  (Tr., at 1-4.)  Lauriano now seeks judicial review of the

Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

    Lauriano briefs five legal issues:

    1.  The ALJ failed to adhere to the requirements of the treating source
rule in his evaluation of the opinions offered by Plaintiff's  treating
physician Dr. Kimberly Masterson.

    2. The ALJ failed to adhere to the requirements of the treating and
examining source rules in his evaluation of the opinions offered by Dr.
Cheryl Reed, O.D., the Doctor of Optometry who evaluated Plaintiff on
behalf of the United Disability Services Low Vision Services in order to
make recommendations for low vision aids and accommodations for
school.

    3. The ALJ applied an improper standard of law in finding that
Plaintiff's accommodations that allow her to attend college classes are
not relevant to the disability and vocational issues in this claim, and
the ALJ's finding is not supported by substantial evidence.

    4.  The ALJ's residual functional capacity (RFC) assessment is not
supported by substantial evidence.

    5.  Plaintiff was denied a fair hearing when the ALJ never gave any
notice that he believed that her accommodations are only related to
attending college and these accommodations are not related to the
workplace, and this finding by the ALJ is not supported by substantial
evidence.

(Doc. 16, at 1-2.)

---

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## II.  PERSONAL BACKGROUND INFORMATION

Lauriano was born on May 6, 1992, and was 18 years old as of her application date.  (Tr., at 20, 32.)  Accordingly, Lauriano was at all times considered a "younger person" for Social Security purposes.  *See* 20 C.F.R. §  416.963(c).  Lauriano has a high school education, is enrolled at university, and is able to communicate in English.  (Tr., at 18, 20, 33.)  She has no past relevant work.  (Tr., at 20, 35, 56.)

## III.  MEDICAL EVIDENCE

Disputed issues will be discussed as they arise in Lauriano's brief alleging errors by the ALJ.  A short summary of relevant medical history follows here.  As noted earlier, Lauriano applied for Supplemental Security Income benefits on May 7, 2010.  (Doc. 13, tr., at 105-111.)  Lauriano had listed her physical or mental conditions that limit her ability to work as "blind in left eye; stroke caused weakness; depression; and asthma."  (Tr., at 124.)

Lauriano had a history of severe persistent asthma with respiratory failure. On June 17, 2009, Lauriano was in her bathroom at home when she called out to her step-uncle that she was having difficulty breathing.  She then fell over and hit her head on the bathtub.  When EMS arrived, she was in respiratory failure.  (Tr., at 204-210.)  She remained in the hospital until July 2, 2009, when she was transferred to an in-patient rehabilitation center.  Her discharge diagnosis was respiratory failure and traumatic brain injury.  (Tr., at 204.)

4

The rehabilitation center noted that, prior to this traumatic incident, Lauriano was a high school student who had been "active and independent." (Tr., at 381.)  Lauriano was admitted for physical therapy, occupational therapy, speech therapy, and psychological counseling.  (Tr., at 381-382.)

It was also determined that Lauriano had suffered a "right occipital stroke" on June 17, 2009.  As a result, since that time she has been unable to see out of her left eye, and her right eye was weaker.  (Tr., at 558.)  On July 18, 2009, she was assessed by Drusilla Grant, O.D., with "myopic astigmatism, accommodative insufficiency, blindness in the left eye, and visual field loss in the right eye."  At that time, she was referred to Dr. Cheryl Reed, for a low vision assessment.  (Tr., at 559.)

Dr. Reed evaluated Lauriano as follows:

Sarah [Lauriano] has reduced visual acuity in her right eye and no vision in her left eye.  Because of this she has difficulty reading small print and seeing detail at a distance.  Visual fatigue and loss of place is also a problem.  Sarah was introduced to monocular telescopes to aid in reading signs and viewing the chalkboard.  The telescope was loaned for trial use and Sarah indicated that she did not find it to be useful.  Sarah should be seated in front of the classroom and receive a copy of the notes at the beginning of class.  For reading, large print was helpful.  Good contrast print which is 14-16 pt. in size is recommended.  When print cannot be enlarged, Sarah should have access to the Makrolux magnifier which enlarges and enhances contrast of the print.

Sarah has difficulty with mobility because of loss of vision in her left eye, left visual field loss in her right eye, reduced contrast sensitivity, and loss of depth perception.  Sarah runs into people and objects on her left side , and she misses or misjudges steps, curbs, and dropoffs.  An orientation and mobility assessment is recommended.

> Because Sarah has difficulty seeing the computer keyboard and
> viewing the monitor, accommodations for the computer are suggested.
> Enhancement of the cursor may also be helpful.

(Tr., at 272.)

Kimberly A. Masterson, M.D., is Lauriano's treating primary care physician.

Dr. Masterson prepared a disability evaluation dated March 12, 2012, in connection

with Lauriano's request for accommodations for Kent State University.  (Tr., at 673-

675.)  Dr. Masterson stated:

> Sarah Lauriano has multiple disabilities which affect her ability to
> learn and perform tasks.  She had a stroke in 2009 which caused
> blindness in one eye.  This stroke also affected her emotional health,
> ability to concentrate and may have had effects on processing
> information.  She is requesting to use a calculator for math.  I think
> that this is a reasonable accommodation given her underlying
> disabilities.

(Tr. ,at 673.)  Although Dr. Masterson was Lauriano's treating physician both

before and after her injury (*see generally* tr., at 596-602, 605-606, 611-614),

Lauriano did not provide any further specific support for her Social Security claims

from Dr. Masterson.


## IV.  TESTIMONY OF VOCATIONAL EXPERT

At the hearing, counsel for Lauriano pointed out in his opening statement

that the accommodations required by Lauriano for college "would clearly put her

into accommodated work."  (Doc. 13, tr., at 31.)  Counsel stated that Lauriano, at

best, would be "able to do some limited accommodated work, which is not SGA."  *Id.*

6

The vocational expert Primm provided testimony.  (Tr., at 55-61.)  The ALJ posed a hypothetical question, which served in large part as the basis for his RFC finding.  The hypothetical VE Primm was asked concerned a younger  individual limited to light work on an exertional basis, who could not climb ladders, ropes, and scaffolds, but could occasionally climb ramps and stairs, as long as that was not an essential function of her job.  She would be limited to performing simple, routine tasks that would not require normal visual acuity, depth perception, binocular vision, or a full or near-full visual field in the better eye.  She cannot operate motor vehicles, and cannot work around moving or dangerous machinery, or at unprotected heights.  Without accommodation for the visually impaired, she cannot do data entry.  She would function best if she did not have to handle money, or deal with math functions, as an essential function of the job.  This hypothetical person would need  to avoid even moderate exposure to dust, fumes, odors, gases, and poor ventilation.  (Tr., at 56-57.)

The vocational expert responded that this hypothetical individual could perform several jobs.  The first light duty position would be an information clerk position, DOT number 237.637-018, SVP level of 2, unskilled.  There are approximately 997,000 positions nationally, and 27,000 in the state of Ohio. Second, a ticket taker, also light duty unskilled, DOT number 344.667-010. For this position, there are approximately 107,000 positions in the national economy, and 1,900 in Ohio.  The third position is garment folder, another light duty unskilled

7

position, DOT number 789.687-066.  There are 394,000 positions nationally, and 20,000 positions in the state of Ohio.  (Tr., at 57.)

When the ALJ modified the hypothetical's limitations to sedentary work, the VE responded that such a hypothetical individual is more restricted in the positions that may be available in the national economy.  The VE suggested possibly a surveillance monitor, DOT 379.367-010, but the ALJ determined that Lauriano could not do that.  The VE mentioned a pari-mutuel ticket checker, but said that position would require greater demands of visual acuity than were presented in the hypothetical.  (Tr., at 57-59.)

Counsel for Lauriano clarified that the information clerk, the ticket taker, and the garment folder positions all required frequent reaching and handling of objects, with frequent near visual acuity.  (Tr., at 60.)

## V.  ALJ's DECISION

The ALJ reported that, since her head injury, Lauriano "now has total blindness in her left eye and reduced visual field, contrast sensitivity, and visual acuity in her right eye, which causes difficulty reading small print and seeing details at a distance as well as visual fatigue." (Doc. 13, tr., at 18.)  Although her vision has improved since the time of the injury, "she still does have significant issues with her vision."  *Id.*

The ALJ made the following findings of fact and conclusions of law in his June 1, 2012, decision:

8

1.  The claimant has not engaged in substantial gainful activity since May 7, 2010, the application date (20 CFR 416.971 et seq.).

2.  The claimant has the following severe impairments:  Traumatic brain injury/right occipital hemorrhagic infarct; asthma; blindness of the left eye with decreased visual acuity and limited visual field in the right eye (quadrantanopsia); depression, in partial remission; cognitive disorder; posttraumatic stress disorder (PTSD); anxiety state, NOS (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can only occasionally climb ramps and stairs so long as it is not an essential function of the job and can never climb ladders, ropes, and scaffolds.  She can perform simple, routine tasks that do not require normal visual acuity, depth perception, binocular vision, or a full or near full visual field in the better eye. She cannot operate a motor vehicle, work around moving or dangerous machinery, or work at unprotected heights.  Without accommodation for the visually impaired, she cannot do data entry.  She would function best if she did not have to handle money or deal with math functions as an essential function of the job.  She should avoid even moderate exposure to dust, fumes, odors, gases and poor ventilation.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on May 6, 1992, and was 18 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since May 7, 2010, the date the application was filed (20 CFR 416.920(g)).

(Doc. 13, tr., at 15, 17, 20-21.)

## VI.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## VII.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of

evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed.  *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VIII.  ANALYSIS

Several of the errors raised by Lauriano are interrelated, as discussed in her brief in support:

> 1.  The ALJ failed to adhere to the requirements of the treating source rule in his evaluation of the opinions offered by Plaintiff's  treating physician Dr. Kimberly Masterson.

11

2. The ALJ failed to adhere to the requirements of the treating and examining source rules in his evaluation of the opinions offered by Dr. Cheryl Reed, O.D., the Doctor of Optometry who evaluated Plaintiff on behalf of the United Disability Services Low Vision Services in order to make recommendations for low vision aids and accommodations for school.

3. The ALJ applied an improper standard of law in finding that Plaintiff's accommodations that allow her to attend college classes are not relevant to the disability and vocational issues in this claim, and the ALJ's finding is not supported by substantial evidence.

4. The ALJ's residual functional capacity (RFC) assessment is not supported by substantial evidence.

(Doc. 16, at 1.)

## A.  Treating and Examining Source Rule

As to the weight assigned to Dr. Masterson's and Dr. Reed's opinions, the

ALJ's June 2012 decision discussed opinions of the agency consultants first, and

then addressed the weight assigned to these contested opinions, as follows:

> Finally, the opinion provided by Cheryl Reed, O.D., and Kimberly Masterson, M.D., that the claimant requires accommodations in the academic setting is afforded only partial weight in this case, as I find the given limitations to relate more directly to her ability to function successfully as a college student but do not necessarily translate directly to a vocational setting.

(Tr., at 20.)

It is well-recognized that an ALJ must generally give greater deference to the

opinions of a claimant's treating physicians than to non-treating physicians.

*Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  This doctrine, often referred to

as the "treating physician rule," is a reflection of the Social Security

12

Administration's awareness that physicians who have a long-standing treatment relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The treating physician doctrine requires opinions from treating physicians to be given controlling weight where the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  In other words, treating physicians' opinions are only given deference when supported by objective medical evidence.  *Vance*, 2008 WL 162942, at *3 (citing *Jones v. Commissoner*, 336 F.3d 469, 477 (6th Cir. 2003)).

Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).  Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s).  *Blakley*, 581 F.3d at 406; *Vance v. Commissioner of Social Security*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008).  Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight.  *Blakley*, 581 F.3d at 406-407;

13

*Winning v. Commissioner*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).

Remand may be appropriate when an ALJ fails to provide adequate reasons explaining the weight he assigned to the treating source's opinions, even though "substantial evidence otherwise supports the decision of the Commissioner." *Kalmbach v. Comm'r of Soc. Sec.*, No. 09-2076, 2011 WL 63602, at *8 (6th Cir. Jan. 7, 2011) (quoting *Wilson*, 378 F.3d at 543-46).

Lauriano argues that the ALJ substituted his lay opinion for the opinion of Dr. Masterson, treating physician, and the opinion of Dr. Reed, a specialist in the evaluation and treatment of visual disorders.  (Doc. 16, at 16.)  The ALJ's assignment of "partial weight" to the opinions of these two, on the basis that they were rendered in an academic rather than vocational setting, is an assertion unsupported by evidence, according to Lauriano.  *Id.*  Lauriano claims that the ALJ has neither medical nor vocational expertise to render his own opinion as to whether the accommodations Lauriano received would place a job in "work under special conditions."  (Doc. 16, at 16-17, citing 20 C.F.R. § 416.973(c).)

First, the court notes the limited nature of the accommodations supported by the treating physician Dr. Masterson.  Although Dr. Masterson noted in passing that Lauriano "has multiple disabilities which affect her ability to learn <u>and perform tasks</u>," the only specific accommodation she addressed was Lauriano's request to use a calculator for math.  (Tr., at 673, emphasis added.)  As noted above, although Dr. Masterson was Lauriano's treating physician both before and after her

14

injury (*see generally* tr., at 596-602, 605-606, 611-614), no specific support for the disabilities underlying Lauriano's Social Security claims was provided from Dr. Masterson.  In the overall context of this claim, the court cannot find that the ALJ's dismissal of Dr. Masterson's opinion as entitled to only "partial weight" was improper.

However, the examining specialist Dr. Reed did provide more specific accommodations related to Lauriano's disabilities.  The opinion of an examining source, such as Dr. Reed here, is entitled to more weight than a source who has not examined the claimant.  20 C.F.R. § 416.927(c)(1).  In addition, more weight should be given to the opinion of a specialist about medical issues related to her area of specialty than to the opinion of a source who is not a specialist.  20 C.F.R. §§ 416.927(c)(5); 416.927(c)(2)(ii).  As Lauriano points out, Dr. Reed is a specialist in the relevant field, a Doctor of Optometry (doc. 16, at 4-5, citing SSR 06-03p), whereas the state agency reviewing physicians are not:  Dr. Elizabeth Das is a specialist in anesthesiology, and Dr. Louis Goorey is a specialist in pediatrics.  (Doc. 16, at 8-9.)  Thus, absent some justification, the opinion of Dr. Reed should be entitled to more weight.  20 C.F.R. §§ 416.927(c)(1); 416.927(c)(5); 416.927(c)(2)(ii). The ALJ has failed to give good reasons, supported by evidence in the record, why Dr. Reed's opinion was only given "partial weight."  (Tr., at 20.)

The Commissioner answers that the ALJ plainly stated that the accommodations related more to Lauriano's ability to function in school, and did not necessarily translate to a vocational setting.  (Doc. 17, at 14.)  The Commissioner

15

argues that 20 C.F.R. § 416.973(c) would not apply to Lauriano because "the ALJ should consider this information when assessing whether an individual can perform substantial gainful activity when her past work was performed under special conditions," and here Lauriano had no past relevant work.  The Commissioner does not provide any authority for the proposition that the regulation is limited in this manner.  (Doc. 17, at 15.)  In addition, the Commissioner does not identify any testimony or medical evidence that supports a distinction between Lauriano's visual accommodations in an academic as opposed to a vocational setting.  *See, e.g.*, *Pfeiffer v. Astrue*, 576 F.Supp.2d 956, 962-963 (W.D. Wis. 2008) (distinction made by ALJ not made by any medical professionals).

The regulation itself reads:

(c) If your work is done under special conditions.  The work you are doing may be done under special conditions that take into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital.  If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity.  Also, if you are forced to stop or reduce your work because of the removal of special conditions that were related to your impairment and essential to your work, we may find that your work does not show that you are able to do substantial gainful activity.  However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level.  Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which--

(1) You required and received special assistance from other employees in performing your work;

(2) You were allowed to work irregular hours or take frequent rest periods;

16

> (3) You were provided with special equipment or were assigned work especially suited to your impairment;
>
> (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
>
> (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or
>
> (6) You were given the opportunity to work, despite your impairment, because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. § 416.973(c).  While arguing that Section 416.973(c) does not apply to Lauriano's case because any accommodations or "special conditions" merely applied in an academic setting, the Commissioner at the same time states that Lauriano's college load should be considered "a fact that is relevant to her ability to work." (Doc. 17, at 16.)

The Sixth Circuit has pointed out that attending college is not the equivalent of being able to engage in substantial gainful activity.  *Cohen v. Secretary, HHS*, 964 F.2d 524, 530-531 (6th Cir. 1992).  The court noted that classroom attendance and homework "are a lot less demanding than full-time remunerative work." *Cohen*, 964 F.2d at 530 (quoting *Parish v. Califano*, 642 F.2d 188, 191 (6th Cir. 1981)).  In *Cohen*, a case involving chronic fatigue syndrome, the court found that the capacity to pass one or two law school classes per semester did not indicate "that the claimant was capable of sustaining substantial gainful employment in the national economy."  *Cohen*, 964 F.2d at 530-531.

17

The Commissioner points to *Bridges v. Commissioner* to distinguish *Cohen*. (Doc. 17, at 16-17.) In *Bridges v. Commissioner of Soc. Sec.*, the magistrate judge pointed out that *Cohen* involved part-time college attendance, unlike the claimant before the court in *Bridges*. *Bridges v. Commissioner of Soc. Sec.*, No. 1:09CV2872, 2011 WL 1113442, at *3 (N.D. Ohio Jan. 12, 2011). The court found: "Full-time college attendance provided substantial evidence to contradict Plaintiff's claim of inability to engage in substantial gainful work activity." *Bridges*, 2011 WL 1113442, at *3. The court also noted that, unlike in *Cohen*, "there was no evidence indicating that the claimant was having difficulty attending college," and also "there was no evidence her studies were dependent on special accommodation." *Id.*

The Commissioner finds it significant that Lauriano "was enrolled in a full college course load" at the time of the ALJ's decision. (Doc. 17, at 16.) In contrast, Lauriano argues that *Cohen* and *Bridges* support her disability claim. (Doc. 18, at 3.)

First, Lauriano points out that she had failed two classes in the only semester she had completed at Kent State by the time of the hearing. (Doc. 18, at 3.) In response to the ALJ's direct question at the hearing, Lauriano testified that she had failed two classes (algebra and chemistry) in her first semester. (Doc. 13, tr., at 41-42, 43.) She also testified that she had to drop a class in her current (second) semester because the university was unable to provide accommodations for

18

that particular class.  (Tr., at 51-52.)  Thus, there is some evidence indicating that Lauriano was having difficulty attending college.

Lauriano also testified that, while she had been a good student in high school, college had been an adjustment:  "I had a lot of accommodations and I had to decide which accommodations I needed for each class, seeing as each class was different."  (Tr., at 41.)  She testified to her struggles, including failing the two classes above.

The accommodations which Lauriano received at Kent included:

. . . the university SAS office takes all of the textbooks she needs for a semester and enlarges the print in all of the books (Tr. 45); textbooks in audio format (Tr. 672), copies of notes provided before class begins (Tr. 672), use of a Zoom Text device to enlarge normal sized print (Tr. 46, Tr. 672), preferential seating, extended time and quiet setting for tests (Tr. 44, Tr. 671-675), and the university sends a special bus for disabled students to her front door daily to transport her to and from classes (Tr. 46-47).

(Doc. 16, at 16-17, citing transcript.)  Thus, there is some evidence that Lauriano's studies were dependent on special accommodations.

While it is not this court's role to determine the issue, the accommodations required by Lauriano would appear analogous to a situation of work which is "done under special conditions" that take into account an impairment.  20 C.F.R. § 416.973(c).  For example, Lauriano required and received special assistance in performing her academic work, see 20 C.F.R. § 416.973(c)(1), in that she was provided with special enlarged copies of her textbooks, and copies of notes were provided to her before class began.  She was provided with special equipment

19

especially suited to her impairment, see 20 C.F.R. § 416.973(c)(3), in that she was provided textbooks in audio format, and was provided with a ZoomText device to enlarge normal sized print.   In addition, Lauriano required specially arranged circumstances to get to and from her classes, see 20 C.F.R. § 416.973(c)(4), in that a special bus for disabled students was sent to her front door to transport her to and from classes.

At step five, the burden of proof is on the Commissioner. *Wilson*, 378 F.3d at 548 (citing *Walters*, 127 F.3d at 529).  The ALJ made a finding that Lauriano was not disabled, and determined that Lauriano would be able to perform the requirements of representative occupations such as information clerk, DOT 237.637-018; ticket taker, DOT 344.667-010;  and, garment folder, DOT 789.687-066.  The ALJ stated that these findings were supported by the testimony of the vocational expert.  (Doc. 13, tr., at 20-21.)

However, if the vocational expert's testimony is based on an insufficient hypothetical question, it "does not constitute substantial evidence to support a finding of no disability."  *Alverio v. Chater*, 902 F.Supp. 909, 929 (N.D. Iowa 1995) (quoting *Chamberlain v. Shalala*, 47 F.3d 1489, 1495 (8th Cir. 1995)).  In order for the ALJ to rely on the VE's testimony, the posed hypothetical must accurately and fully describe the claimant's impairments.  *Morse v. Shalala*, 32 F.3d 1228, 1230 (8th Cir. 1994) (per curiam); *Alverio*, 902 F.Supp. at 929.  "Hypothetical questions must include a full description of a claimant's impairments in order for the

20

testimony elicited by such questions to constitute substantial evidence to support the ALJ's decision." *Folsom v. Barnhart*, 309 F.Supp.2d 1286, 1298 (D. Kan. 2004) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)).  Vocational testimony elicited by hypotheticals that fail to relate with precision to the physical impairments of the particular claimant is not substantial evidence on which the ALJ may base his decision.  *Mathews v. Barnhart*, 220 F.Supp.2d 171, 175 (W.D. N.Y. 2002).

Here, the hypothetical posed to the ALJ referred to the hypothetical individual as being "limited to performing simple, routine tasks that did not require normal visual acuity, depth perception, binocular vision, or a full or near-full visual field in the better eye."  (Tr., at 56.)  This recitation does not really give a full and precise description of Lauriano's impairments as set forth by Dr. Reed, and supported by Lauriano's testimony.  Dr. Reed noted that Lauriano specifically "has difficulty with mobility because of loss of vision in her left eye, left visual field loss in her right eye, reduced contrast sensitivity, and loss of depth perception.  Sarah runs into people and objects on her left side, and she misses or misjudges steps, curbs, and dropoffs."  (Tr., at 272.)  Dr. Reed recommended a magnifier which enlarges and enhances contrast of the printed matter, and also noted that Lauriano had difficulty seeing a computer keyboard and viewing the monitor.  *Id.*

The VE's testimony "is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job."  *Mathews*, 220 F.Supp.2d at 175.  To constitute substantial evidence

21

in support of the ALJ's findings, as discussed above, the hypothetical must include a full and accurate description of the claimant's impairments and limitations.  *Morse*, 32 F.3d at 1230; *Folsom*, 309 F.Supp.2d at 1298; *Alverio*, 902 F.Supp. at 929.  The shortcomings of the hypothetical in this case are reflected in the resulting findings that Lauriano would be able to perform the requirements of representative occupations such as those listed in the ALJ's decision.  (Tr., at 20-21.)

For example, the Dictionary of Occupational Titles gives the job description of Information Clerk, or Travel Clerk, as:

> Provides travel information for bus or train patrons:  Answers inquiries regarding departures, arrivals, stops, and destinations of scheduled buses or trains.  Describes routes, services, and accommodations available.  Furnishes patrons with timetables and travel literature.  Computes and quotes rates for interline trips, group tours, and special discounts for children and military personnel, using rate tables.

DOT 237.637-018.  It is possible that a person who needs accommodations such as visual enlargement of her textbooks, and the use of a ZoomText to enlarge normal sized print, in an academic setting, would also require similar "special conditions" at work in order to be able to answer "inquiries regarding departures, arrivals, stops, and destinations of scheduled buses or trains," or to describe routes and services, or to compute and quotes rates for trips "using rate tables."

The court cannot determine the extent to which the ALJ may have given these issues consideration, because the assignment of "partial weight" to Dr. Reed's opinion was based on an assertion that "the given limitations . . . relate more directly to her ability to function successfully as a college student but do not

necessarily translate directly to a vocational setting." (Tr., at 20.) This language does not reject outright Dr. Reed's accommodations, but also does not clarify which, if any, of those accommodations would translate into the vocational setting.

To take another example, the Dictionary of Occupational Titles gives the job description of Ticket Taker as:

> Collects admission tickets and passes from patrons at entertainment events:  Examines ticket or pass to verify authenticity, using criteria such as color and date issued.  Refuses admittance to patrons without ticket or pass, or who are undesirable for reasons, such as intoxication or improper attire.  May direct patrons to their seats.  May distribute door checks to patrons temporarily leaving establishment.  May count and record number of tickets collected.  May issue and collect completed release forms for hazardous events, and photograph patron with release form for permanent records file.  May be designated Gate Attendant (amuse. & rec.) or Turnstile Attendant (amuse. & rec.) when collecting tickets at open-air event.

DOT 344.667-010.  Again, it is possible that a person who needs accommodations such as visual enlargement of textbooks, and the use of a ZoomText, in an academic setting, would also require similar "special conditions" in order to be able to examine tickets or passes "to verify authenticity, using criteria such as color and date issued," or whether she would be able to issue and collect complete release forms.  It is also unclear whether a person who "runs into people and objects on her left side, and ... misses or misjudges steps, curbs, and dropoffs," as Dr. Reed determined (tr., at 272), would be able to "direct patrons to their seats."  *See also* tr., at 35 ("walking into people or objects is a problem"), 47-48, 50.

The court finds that the ALJ's RFC is not supported by substantial evidence in the record.  In addition, the court finds that remand is appropriate because the

23

ALJ failed to provide adequate reasons explaining the weight he assigned to the examining source Dr. Reed's opinions.

### B.  Improper Standard:  SSR 83-14

Lauriano also argues that the ALJ applied an improper standard of law by failing to follow SSR 83-14, which provides:

> Where a person has a visual impairment which is not of Listing severity but causes the person to be a hazard to self and others – usually a constriction of visual fields rather than a loss of acuity – the manifestations of tripping over boxes while walking, inability to detect approaching persons or objects, difficulty in walking up and down stairs, etc., will indicate to the decisionmaker that the remaining occupational base is significantly diminished for light work (and medium work as well).

(Doc. 16, at 17, quoting SSR 83-14.)  The Commissioner responds that the ALJ utilized a vocational expert who did consider the effect Lauriano's limitations would have on  the occupational base.  (Doc. 17, at 17, citing tr., at 56-57.)  The Commissioner states that the ALJ did not find that Lauriano could perform the full demands of light work; rather, he found she could perform light work, with exceptions for her visual impairment(s).  (Doc. 17, at 17, citing tr., at 17.)  The court does not find that the ALJ misapplied SSR 83-14.

### C.  Fair Hearing

Finally, Lauriano argues that she was "denied a fair hearing when the ALJ never gave any notice that he believed that her accommodations are only related to

24

attending college and these accommodations are not related to the workplace." Lauriano contends that she was not given notice and an opportunity to be heard on the issue of her academic accommodations, as well as the ALJ's "belief that . . . babysitting of her brothers is evidence that she can work." (Doc. 16, at 22-23.)

A claimant is required to receive meaningful notice and an opportunity to be heard before her claim can be decided. *Stoner v. Secretary, HHS*, 837 F.2d 759, 760-761 (6th Cir. 1988). Any party has the right to appear before the ALJ, either personally or by means of a designated representative, to present evidence, and to state her position. *Stoner*, 837 F.2d at 761. Here, there is no evidence in the record that Lauriano did not receive a full and fair hearing. The record indicates, for example, that the ALJ did not limit Lauriano's counsel from asking questions, calling witnesses, or otherwise introducing evidence relevant to the ALJ's determination. *See, e.g.*, *Despins v. Commissioner of Social Sec.*, No. 07-1385, 2007 WL 4462369, at *7 (6th Cir. 2007); *see generally* doc. 13, tr., at 27-63 (hrg. transcript).

SUMMARY

For the foregoing reasons, the court finds that the decision of the Commissioner is not supported by substantial evidence. Specifically, the court finds that the ALJ's RFC is not supported by substantial evidence in the record. In addition, the court finds that remand is appropriate because the ALJ failed to provide adequate reasons explaining the weight he assigned to the examining

25

source's opinion.  The record evidence as discussed in the ALJ's decision is not such that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination.  The Commissioner's decision denying benefits is REVERSED and REMANDED for action consistent with this Order.


       IT IS SO ORDERED.

Dated:   Feb. 19, 2015                   /s/ Kenneth S. McHargh
                                           Kenneth S. McHargh
                                           United States Magistrate Judge